[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes to this court on a petition for custody pursuant to the Uniform Custody Jurisdiction Act dated April 10, 1991. On June 25, 1991, the Honorable Edgar W. Bassick, III, conducted a hearing and entered interim orders. The sum and substance of those orders were that the court "granted temporary custody of Nicholas to Nicholas' father, Mr. Amargos, on a temporary basis until further order of the court."
Nicholas has resided with his father continuously since March 24, 1991 in Florida at the father's parents' residence.
CT Page 8420 This case was well presented by the attorney for the mother, the attorney for the father and the attorney for the child. This court heard several days of testimony, much of which was conflicting as it related to incidents regarding the parties. The court heard the parties testify. The court heard other witnesses which included the Family Relations officer, Donald Tolles, and Dr. Ralph Welsh, a board certified clinical psychologist.
Judge Bassick's orders were comprehensive and required periodic reporting by the father to the mother, which documents were introduced into evidence.
The court is mindful of and has followed General Statutes 46b-56 and its mandate that the court shall be guided by the best interest of the child.
Defendant's exhibit 12, the Children's Home Society of Florida's report dated April 14, 1992, is a comprehensive report setting forth the situation in Florida with the father. This court is particularly impressed with the Florida law which provides for certain tests to be administered as part of any child custody evaluation. It is helpful to the trier of fact to know that, as a minimum, at the time the tests were conducted the father was tested as being drug free. Also, the test determined that he is HIV-negative. The Children's Home Society's report indicated that Mr. Amargos, the father, hereinafter called the father, was a neat, handsome gentleman. This court found him to be a truthful and competent witness.
This court will not spend a lot of time discussing the origin of the relationship, but it is clear that the mother of this child was of tender age at the time Nicholas was born. Nicholas was born on April 3, 1990, and the mother is presently only 20 years of age. Her testimony was that the relationship began when she was 14 or 15.
The family support for the father in Florida would be his mother and father who received glowing reports in the Children's Home Society report. Although there is a conflict as to the age, the father has testified that his parents are age 65 for his father and age 64 for his mother.
The Florida condominium, which is 2 bedroom, 2 bath, is described as "lovely" in the report. Nicholas is described in the report as a "beautiful child, happy, playful and well developed for his age. He is pleasant, easily involved and verbal." "Mr. Amargos is deeply religious." Mr. Amargos' parents are "pleasant and very warm. They are healthy, vibrant people, and there seems to be much love for Nicholas." The CT Page 8421 observations were that Mr. Amargos presented himself "very well." His relation to his son is "warm and genuine." His appearance appears "well adjusted and happy in his environment." Nicholas' relationship to the grandparents appears to be "loving and close." Mr. Amargos seems to be an "easygoing, laid back gentleman and seems very interested in his son's development." All in all, the Childrens' Home Society of Florida's report is an extraordinary presentation of a slice of the father's life.
The court heard the testimony of Donald Tolles and reviewed plaintiff's Exhibit C that was introduced into evidence as a full exhibit which is the Family Relations Division's report on custody. That report was completed on May 29, 1992. Mr. Tolles indicated that part of the report had been done by a prior Family Relations officer. The court finds that this report is comprehensive and clear. The Family Relations officer testified that had it not been for his subjective opinion that the father would not foster a relationship with the child and the mother, that he might have considered giving the recommendation that the father be the custodian. So that it is clear that this was a "close call" as far as the Family Relations officer was concerned.
Two year old Nicholas, as set forth in the Family Relations officer's report, is a healthy child and that he is taken on a regular basis to a physician and has no medical problem.
In the report reference is made to the fact that it was unlikely that Mr. Amargos would be able to provide for his son's needs without his parents. Although the report indicates that it was his intention to relocate from his parents, the testimony at trial was clear and convincing that he intends to remain with his parents, both from the standpoint of an economic support and family support for Nicholas.
Dr. Welsh also believed that the mother would able to provide for both of her children if she receives family assistance. What is clear is that the mother's work record is minimal, and when she worked, she worked minimal jobs. She has not finished high school. She is a state aid recipient although she testified that her current companion, one Faustino Mercardo, makes $400.00 per week. Since she has ended her relationship with Rogelio Amargos, the father of Nicholas, she has taken up a relationship with Mr. Mercardo and has a son, Steven, who was born November 7, 1991, another child born out of wedlock. This court is concerned about that conduct as an example to her child Nicholas.
Mr. Mercardo, her companion, has a felony conviction CT Page 8422 for possession with intent to sell narcotics. He was arrested in October, 1988 and convicted on March 10, 1989. He was given a 12 year sentence, execution suspended after seven years. He served eighteen months. He was put on probation for four years. Mr. Mercardo did not testify in this case so this court had no opportunity to evaluate his role in the relationship with Nicholas nor to evaluate his parenting skills. This court is concerned about his conviction since this court perceives sale of drugs to be one of the most insidious of crimes and is causing death and destruction in the city communities in particular. Very inconsistent testimony was given by the mother concerning his work record. She talked about him working, not on a regular basis, but then working when it would have been court time and making $400.00 per week. If he is making $400.00 per week, it appears that he ought to be able to provide support for his own child Steven without state assistance.
Also of concern to this court is something that the court never found out about which is what are the terms of his probation. He is on probation from March 10, 1989 for four years which means he is still on probation. What are the terms and conditions of that probation and does he stand in violation of any of those terms and what matters are proceeding, if any, against him at this point. These are all unanswered questions. This court would have enjoyed the opportunity to have seen Mr. Mercardo on the stand.
The father has high goals for his son. He is a well educated person, having attended college. He went three and a half years but did not get a degree. He is regularly employed. He would like to see his son attend college and be educated and be self-supporting.
During the trial, the mother was offered visitation of Nicholas on one evening while the father had Nicholas in Connecticut, but she declined that opportunity since she had other things planned and was not able to change her schedule.
Nicholas' life with his father seems structured which is important to a young person. Dr. Welsh testified that he thought that there were some psychological problems as it related to the father. He had diminished capacity to parent; such as, he was authoritative, had to be in control and manipulative. He was found to be, however, of average intelligence and the psychologist indicated that because he had these problems does not mean he is not a fit parent.
The mother also had her problems as testified to by Dr. Welsh. She has had a depressive disorder and was a manipulated individual with what he called borderline grade CT Page 8423 level of intelligence. She, of course, became pregnant in approximately the seventh grade.
This court notes that it was the recommendation of the attorney for the child that the parents share joint custody. This means that the attorney found both parents to be fit. This court has given consideration to those recommendations in its decision.
Based on all of the foregoing, this court is of the opinion it would be in the best interest of the minor child, Nicholas, to remain with his father in Florida with the father as custodian and the mother as a visiting parent. Accordingly, the court makes the following orders:
1. Sole custody of the minor child, Nicholas Amargos, to his father, Rogelio Amargos.
2. The mother of the child, Sonia Rodriguez, is to have liberal visitation rights with the child at his home in Miami upon reasonable notice to the father.
3. The visits to Miami shall be agreed upon by the parents and visitation of the child shall not be unreasonably denied.
4. The court orders, in addition, that the child Nicholas shall have no fewer than three visitation periods with his mother each year including:
 a. A visit by Nicholas to Connecticut for a period of two weeks in duration.
 b. A visit by the mother, Sonia Rodriguez, to Miami for a period up to eight weeks depending on the mother's wishes.
 c. One other visitation period to be selected by the mother for a period of two weeks at whatever location she determines.
 d. The cost of the transportation of Nicholas to Connecticut in any of the circumstances shall be the first one at the father's expense and the second one to be shared equally by the parties.
 e. One of the visits shall occur in the summer months between June and August and one visit shall take place in the winter months between mid November and January of each year. The third visitation is to be unallocated and the parties may pick the appropriate CT Page 8424 time.
5. The cost of the mother's transportation to Miami to visit the child shall be at her sole cost and expense.
6. The parties shall work to foster a relationship of good feelings between the child and the other parent.
7. The parents shall communicate by phone, once per week. The first phone call shall be communicated by the father to the mother at which time she will have an opportunity to speak to the child. The next phone call shall be the mother to the father and she shall speak to Nicholas, and thereafter, they shall alternate. The phone calls are not to be less than 15 minutes each. The father is to pay for his phone calls, the mother to pay for her phone calls. The parties shall agree on a mutually convenient time and day. If they cannot reach agreement, the phone calls shall be at 7:30 p. m. every Sunday night.
8. The father shall continue to write on a monthly basis and to send photographs as outlined in Judge Bassick's orders.
9. The father shall continue to provide all proper and necessary medical attention to Nicholas at his cost.
10. Attorney's fees for the attorney for the minor child shall be divided equally between he parties.
11. Both parties are ordered to conduct themselves in such a manner as to further the emotional and physical well being of the child.
12. No child support is ordered based on the child support guidelines.
13. All requests for relief not expressly addressed in this decision are rejected by this court and this includes counseling.
EDWARD R. KARAZIN, JR., JUDGE CT Page 8425